AO 106 (Rev. 04/10) Application for a Search Warrant

FILED ENTERED
LODGED RECEIVED

DEC 10 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON DEPUTY
BY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of                               )
*(Briefly describe the property to be searched*              )
*or identify the person by name and address)*                )     Case No. MJ18-565
                                                             )
Apple iPhone, Model A1661; FCC ID: BCG-E3087A                )
                                                             )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated herein by reference

located in the _____ **Western** _____ District of _____ **Washington** _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Distribution and Possession w/ Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit of Special Agent Earl Wozniak

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Special Agent Earl Wozniak**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____12/10/2018_____

_____
*Judge's signature*

City and state:  Seattle, Washington

**Magistrate Judge James P. Donohue**
*Printed name and title*

**<u>Attachment A</u>**

**Premises to be Searched**

This warrant authorizes the government to search the following premises for the items listed in Attachment B (Items to be Searched for and Seized):

Apple iPhone, Model A1661; FCC ID: BCG-E3087A

## **Attachment B**

### **List of Items to be Searched for and Seized**

This warrant authorizes the government to search for evidence and/or fruits of the commission of the following crimes: Distribution of, and Possession with Intent to Distribute, Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), including but not limited to the following:

The Target Telephone may be searched for the following items:

a.  Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.  Stored list of recent received, sent, and missed calls;

c.  Stored contact information;

d.  Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

e.  Stored text messages.

# AFFIDAVIT OF EARL A. WOZNIAK

STATE OF WASHINGTON )
) ss
COUNTY OF KING )

I, EARL A. WOZNIAK, a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms and Explosives, Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

I am a Special Agent (SA) with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since September 1, 2013. I am currently assigned to the Seattle, Washington Field Office.

I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. Prior to my employment with ATF, I was a Police Officer with the Dallas Police Department, in Dallas, Texas, for three years. I am a graduate of Marquette University where I received a Bachelor of Science in Accounting in 2010. I have received training in the recognition, identification and testing of controlled substances as well as in common methods of trafficking in narcotics. I have participated in surveillance and interdiction operations at known drug locations and have made numerous arrests for drug related crimes. I have further received training in firearms trafficking and the diversion of legal firearms for unlawful purposes, participated in the investigation of many crimes of violence, including robberies, assaults, and homicides, and made numerous arrests for firearms and violent offenses. As a result of my training and experience, I have an understanding of the manner in which narcotics are distributed and various roles played by individuals or groups involved in the distribution, along with the unlawful use of firearms during crimes of violence and/or drug trafficking and firearms trafficking.

AFFIDAVIT OF SPECIAL AGENT WOZNIAK
USAO#2018R01163 - Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       The facts in this affidavit come from my training and experience, and information

2   obtained from other agents, detectives, analysts, and witnesses.  The information outlined

3   below is provided for the limited purpose of establishing probable cause and does not

4   contain all details or all facts of which I am aware related to this investigation.

5   **PURPOSE OF AFFIDAVIT**

6       This affidavit is submitted in support of an Application to obtain a search warrant

7   for an Apple iPhone, Model A1661; FCC ID: BCG-E3087A (the "Target Telephone").

8   As set forth below, there is probable cause to believe that searchng the target telephone

9   will reveal evidence, contraband, fruits, and instrumentalities of violations of Title 21,

10   United States Code, Sections 841(a)(1), Distribution, and Possession with Intent to

11   Distribute, Controlled Substances.

12   **STATEMENT OF PROBABLE CAUSE**

13       On October 1, 2018, I executed an affidavit in support of a Criminal Complaint in

14   the matter of *United States v. Keled Ali*.  The Criminal Complaint is attached hereto as

15   Exhibit 1, and is hereby adopted and incorporated as if set forth fully herein.

16       As described in the Complaint, on March 8, 2018, law enforcement officers

17   executed a federal search warrant at the One Stop marijuana dispensary.  During the

18   search, officers seized a smartphone that was used primarily by Keled Ali.  A subsequent

19   court-authorized federal search of the smartphone revealed that the phone was used in

20   furtherance of Ali's drug trafficking activities, primarily through Ali's extensive use of

21   text message communications to discuss his drug trafficking and arrange sales of

22   marijuana.  Some of this evidence is summarized in the Complaint (pages 9-11).

23       Throughout this investigation, ATF has utilized Cooperating Source #4[1] (CS-4),

24   who is familiar with Keled Ali.  CS-4 has purchased marijuana from Ali on several

25

26   ――――――――――――

27   [1] CS-4 has minor criminal history including misdemeanor charges of theft and obstruction of justice. CS-4 is
working with ATF in exchange for the dismissal of a pending misdemeanor case and for financial remuneration.

28   CS-4 has provided information to ATF on dozens of occasions and that information has been corroborated and/or
later confirmed to have been truthful.

AFFIDAVIT OF SPECIAL AGENT WOZNIAK
USAO#2018R01163 - Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  occasions, both at the business Ali previously operated, known as the One Stop marijuana
2  dispensary (prior to the search on March 8, 2018), and more recently out of Ali's vehicle.
3  When Ali was operating One Stop, CS-4 had no need to contact him by telephone to
4  arrange marijuana transactions. Instead, CS-4 would visit the store and purchase the
5  marijuana. After the search on March 8, 2018, Ali stopped operating One Stop.
6  According to CS-4, Ali continued to sell marijuana after the search and is now selling
7  marijuana out of his vehicle.

8         On two occasions during the Fall of 2018, CS-4 was involved in arranging
9  marijuana transactions with Ali by contacting him over the telephone. The first such
10  occasion was in or about the beginning of August 2018. CS-4 called Ali and they
11  arranged to meet at a particular location. Ali was in a vehicle and sold CS-4 marijuana.
12  The second occasion was on September 22, 2018. CS-4 was with an associate, who
13  dialed the target telephone number in CS-4's presence. Shortly thereafter, CS-4
14  accompanied this associate to purchase marijuana from Ali.

15         Ali was arrested on the charges in the complaint on October 19, 2018. On that
16  day, at approximately 2:37 p.m., agents observed Ali sitting in his vehicle near the
17  Brighton Playfield in South Seattle. Agents observed Ali engaging in what appeared to
18  be two hand-to-hand drug transactions in and around his vehicle. Ali was arrested shortly
19  thereafter. As he was being arrested, a pill bottle fell to the ground off Ali's person; the
20  bottle was subsequently determined to contain 42 oxycodone pills. Ali also dropped a
21  smartphone; specifically, the Target Telephone identified above.

22         Ali waived his *Miranda* rights and gave agents consent to search his vehicle.
23  During the search, agents recovered the following items:

24  • A bag of 39.8 grams of marijuana from the driver's door storage area;
25  • A bag of 64.6 grams of marijuana from a backpack in the trunk;
    • A bag of 419.2 grams of marijuana from a shopping bag in the trunk;
26  • A bag of 477.1 grams of marijuana from a box in the trunk;
27  • A prescription cough syrup bottle with label removed and a scale in the
       vehicle's center console, a box of plastic baggies on the back seat
28

floorboard, and a vacuum sealer in the trunk, all consistent with packaging and distributing narcotics.
- A pipe used to smoke marijuana on the driver's floorboard and articles of dominion and control in Ali's name in the trunk of the vehicle.

Ali admitted the marijuana in the vehicle belonged to him. He stated he was unsure of the exact quantity of marijuana, but estimated it was a couple of ounces (approximately 56 grams). Ali denied distributing marijuana. He stated people came to hang out and smoke with him and that he would sometimes provide them with marijuana, but rejected the premise that he was a dealer of marijuana. Ali also stated the 42 oxycodone pills belonged to him. He claimed an elderly woman who was in his vicinity had a prescription for her pain medications but gave him the pills because Ali was in pain. Ali claimed that he subsequently repackaged the pills in another prescription bottle.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, virtually every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.

Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

AFFIDAVIT OF SPECIAL AGENT WOZNIAK
USAO#2018R01163 - Page 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         a.     The assigned number to the cellular telephone (known as the mobile

2  directory number or MDN), and the identifying telephone serial number (Electronic

3  Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

4  Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

5  important evidence because they reveal the service provider, allow us to obtain subscriber

6  information, and uniquely identify the telephone.  This information can be used to obtain

7  toll records, to identify contacts by this telephone with other cellular telephones used by

8  co-conspirators, to identify other telephones used by the same subscriber or purchased as

9  part of a package, and to confirm if the telephone was contacted by a cooperating source

10  or was intercepted on a wiretap here or in another district.

11         b.     The stored list of recent received calls and sent calls is important

12  evidence.  It identifies telephones recently in contact with the telephone user.  This is

13  valuable information in a drug investigation because it will identify telephones used by

14  other members of the organization, such as suppliers, distributors and customers, and it

15  confirms the date and time of contacts.  If the user is under surveillance, it identifies what

16  number he called during or around the time of a drug transaction or observed meeting.

17  Even if a contact involves a telephone user not part of the conspiracy, the information is

18  helpful (and thus is evidence) because it leads to friends and associates of the user who

19  can identify the user, help locate the user, and provide information about the user.

20  Identifying a defendant's law-abiding friends is often just as useful as identifying his

21  drug-trafficking associates.

22         c.     Stored text messages are important evidence, similar to stored

23  numbers.  Agents can identify both drug associates, and friends of the user who likely

24  have helpful information about the user, his location, and his activities.

25         d.     Photographs on a cellular telephone are evidence because they help

26  identify the user, either through his or her own picture, or through pictures of friends,

27  family, and associates that can identify the user.  Pictures also identify associates likely to

28

AFFIDAVIT OF SPECIAL AGENT WOZNIAK
USAO#2018R01163 - Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  be members of the drug trafficking organization.  Some drug dealers photograph groups

2  of associates, sometimes posing with weapons and showing identifiable gang signs.

3           e.       Stored address records are important evidence because they show the

4  user's close associates and family members, and they contain names and nicknames

5  connected to phone numbers that can be used to identify suspects.

6                                    **CONCLUSION**

7           Based on my experience, training, and the evidence obtained during this

8  investigation, I believe that searching the Target Telephone will reveal evidence,

9  contraband, fruits, and instrumentalities of violations of Title 21, United States Code,

10  Sections 841(a)(1), Distribution, Possession with Intent to Distribute Controlled

11  Substances.

12

13

14                                    EARL A. WOZNIAK, Affiant
                                      Special Agent, ATF
15

16           SUBSCRIBED AND SWORN before me this _____ day of December, 2018.

17

18

19

20           JAMES P. DONOHUE
             United States Magistrate Judge

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT WOZNIAK
USAO#2018R01163 - Page 6

# EXHIBIT 1

# (COMPLAINT)

```
_____ FILED    _____ ENTERED
_____ LODGED   _____ RECEIVED
```

**OCT 01 2018**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELED ALI,<br><br>Defendant. | NO. **MJ18-456**<br><br>COMPLAINT FOR VIOLATIONS |

BEFORE, United States Magistrate Judge, James P. Donohue, Seattle, Washington.

The undersigned complainant, Earl A. Wozniak, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn states:

## COUNT 1
### (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

On or about December 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly possessed a firearm, that is, a Smith & Wesson M&P Shield 9mm semi-automatic pistol, bearing serial number HV25087, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, Maintaining a Drug Involved Premises and Possession of Marijuana with Intent to Distribute, as alleged below in Count 2 and Count 3.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

COMPLAINT – 1
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNT 2
### (Maintaining a Drug Involved Premises)

Beginning in or before October 2017, and continuing through on or about March 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly used, maintained, and leased a place, that is, commercial space located at 5303 Rainier Avenue South, Seattle, Washington, for the purpose distributing marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 856(a)(1) and (b).

## COUNT 3
### (Possession of Marijuana with Intent to Distribute)

On or about March 8, 2018, at Seattle, within the Western District of Washington, KELED ALI knowingly and intentionally possessed, with intent to distribute, marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

All in violation of Title.21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and Title 18, United States Code, Section 2.

And the complainant further states:

## AFFIANT'S BACKGROUND

I am a Special Agent (SA) with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since September 1, 2013. I am currently assigned to the Seattle, Washington Field Office.

I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. Prior to my employment with ATF, I was a Police Officer with the Dallas Police Department, in Dallas, Texas, for three years. I am a graduate of Marquette University where I received a Bachelor of Science in Accounting in 2010. I have received training in the recognition, identification and testing of controlled substances as well as in common methods of trafficking in narcotics. I have participated in surveillance and interdiction operations at known drug locations and have made numerous arrests for

COMPLAINT – 2
USAO#2018

1   drug related crimes.  I have further received training in firearms trafficking and the

2   diversion of legal firearms for unlawful purposes, participated in the investigation of

3   many crimes of violence, including robberies, assaults, and homicides, and made

4   numerous arrests for firearms and violent offenses.  As a result of my training and

5   experience, I have an understanding of the manner in which narcotics are distributed and

6   various roles played by individuals or groups involved in the distribution, along with the

7   unlawful use of firearms during crimes of violence and/or drug trafficking and firearms

8   trafficking.

9           The facts in this affidavit come from my training and experience, and information

10   obtained from other agents, detectives, analysts, and witnesses.  The information outlined

11   below is provided for the limited purpose of establishing probable cause and does not

12   contain all details or all facts of which I am aware related to this investigation.

13                       **STATEMENT OF PROBABLE CAUSE**

14           **A.      The One Stop Marijuana Dispensary.**

15           The One Stop marijuana dispensary, located at 5303 Rainier Avenue South,

16   Seattle, is an illegal, unlicensed marijuana business that was operated by the defendant,

17   Keled Ali.  The ATF and the Seattle Police Department ("SPD") became familiar with

18   the One Stop business because it has been the locus of and/or related to multiple gang-

19   related crimes of violence over the past two years, including a homicide in

20   December 2017 and a drive-by shooting in March 2018.  Because of the violence

21   surrounding the One Stop business, the ATF and SPD conducted further investigation of

22   the business and its operators.

23           On October 28, 2017, an undercover SPD detective ("UC") entered One Stop.

24   The UC smelled the strong odor of marijuana and observed a member's sign-in sheet that

25   was blank.  A black male told the UC that he had to be a "member" to enter the store, and

26   that in order to become a member, a current "documented" member had to vouch for him.

27   The UC then left the store.

28

COMPLAINT – 3
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    On December 8, 2017, a customer of One Stop was murdered shortly after he
2  visited the store.  The customer, a known gang member, went to One Stop and purchased
3  marijuana at the business.  On his way out of the store, rival gang members observed him
4  and followed the customer as he drove away from the business down Rainier Avenue
5  South.  The rival gang members fired multiple shots into the customer's car, killing him.
6  The perpetrator of this murder has been charged with Murder in the King County
7  Superior Court.

8    As part of the investigation of this murder, SPD detectives visited One Stop and
9  requested to review any relevant surveillance video footage.  Initially, the detectives were
10  denied entry into the store, but ultimately the individuals inside the business (all of whom
11  refused to provide their names) allowed the detectives inside and provided the detectives
12  with video footage from December 8 and 13, 2017.  In turn, the SPD detectives provided
13  me with a copy of the footage.

14    A review of the surveillance footage shows numerous individuals entering the
15  store and approaching the counter.  Several large glass jars containing what appears to be
16  marijuana sit on the counter.  The people working at the store can be seen providing the
17  customers with quantities of marijuana over the counter, and collecting money from the
18  customers.  The store employees appear to weigh the marijuana before placing it into
19  small plastic sandwich bags and handing them to the customers, who then exit the store.
20  The footage shows an individual I believe to be the defendant, Keled Ali, selling
21  marijuana to customers by weighing it, bagging it in a clear plastic baggie, and accepting
22  money for the marijuana.

23    On January 26, 2018, ATF Special Agent Hunt ("SA Hunt"), operating in an
24  undercover capacity, entered One Stop.  SA Hunt observed a member's sign in sheet in
25  the small entry lounge area.  The main store area was located through a second, locked
26  door.  Two black males met SA Hunt at the locked door.  SA Hunt told them he was
27  looking to purchase marijuana.  SA Hunt could smell the strong and distinct odor of
28  marijuana in the store.  The black males denied SA Hunt's request to purchase marijuana

COMPLAINT – 4
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | because SA Hunt was not a member. The males at the store told SA Hunt that he had to
2 | have a member of the club vouch for him in order to get his own membership before they
3 | would sell marijuana to him. SA Hunt said he would come back with a member and
4 | exited the store.

5 |     On January 29, 2018, ATF Special Agent Roberts ("SA Roberts"), operating in an
6 | undercover capacity, entered One Stop. The second, locked door to the main business
7 | area was open. SA Roberts saw a black male working at the business and asked to speak
8 | with the manager. The male pointed to the couch in the waiting area, suggesting that
9 | SA Roberts sit and wait for the manager's arrival. The male quickly closed the open
10 | door. Shortly thereafter, Keled Ali entered the room and spoke with SA Roberts. Ali
11 | introduced himself as "Lee" and confirmed he was the manager of the business.
12 | SA Roberts asked Ali if he could enter the business and purchase a quarter-ounce of
13 | marijuana. Ali said he would not allow SA Roberts to enter the sales floor until he
14 | became a "member." SA Roberts informed Ali that a friend of his told him he could
15 | come to the shop to purchase marijuana. Ali reiterated that SA Roberts had to be a
16 | member to purchase marijuana at the store. Ali said that once SA Robert's friend
17 | vouched for him, he would allow SA Roberts to sign up as a member of the dispensary.
18 | Ali suggested that SA Roberts bring his friend to the dispensary on a Saturday to
19 | complete the membership process. SA Roberts then exited the business.

20 |     On February 8, 2018, law enforcement officers conducted physical surveillance at
21 | One Stop. Approximately 30 vehicles came and went from the store. The drivers and/or
22 | passengers of these vehicles entered the store and exited within approximately five
23 | minutes, and then departed the area. Based upon my training and experience, this sort of
24 | high volume, short-stay traffic in an area associated with drug dealing is indicative of
25 | narcotics transactions. Many of the individuals who were identified entering the store
26 | had lengthy and violent criminal histories.

27 |     SPD officers conducted a traffic stop of one of the customers who exited One Stop
28 | on February 8, 2018, because he was driving with a suspended license. This individual

COMPLAINT – 5
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   told the officers that he had just purchased marijuana at One Stop, and showed the

2   marijuana to the officers.  It was contained in a clear plastic sandwich bag.  The customer

3   further stated that he knows One Stop to be an ongoing marijuana dispensary business.

4         On multiple other days during February 2018, ATF agents conducted physical

5   surveillance at One Stop and made observations similar to those described above with

6   respect to the activities of February 8, 2017.

7         On February 21, 2018, agents observed Cooperating Source 5 ("CS-5") arrive at

8   One Stop as the passenger in a vehicle.[1]  CS-5 was observed entering and then leaving

9   One Stop five minutes later.  He reentered the vehicle and it drove away.  Police officers

10  stopped the vehicle to make contact with the driver, who had an outstanding arrest

11  warrant.  Officers spoke with CS-5, who stated that One Stop is a marijuana dispensary

12  and he had just purchased marijuana at the store.  CS-5 showed the officers the

13  marijuana, and stated that the individuals who operated One Stop sold it to him.  The

14  marijuana was packaged in clear plastic baggies.  CS-5 told the officers that in order to

15  purchase marijuana at One Stop, a customer either has to know one of the employees or

16  have someone vouch for him.  CS-5 further stated that he had seen a pistol and a rifle

17  inside of One Stop.

18        On March 6, 2018, individuals at the dispensary, believed to be customers, were

19  targeted in a drive-by shooting which resulted in numerous rounds being fired into the

20  adjoining business suite, which is an immigration support service organization.

21        I have confirmed with the Seattle Police Department, the Seattle City Attorney's

22  Office, and the Washington State Liquor and Cannabis Board that One Stop is not

23  licensed to sell marijuana under the applicable state and local ordinances.  Specifically,

24  although Washington State law requires a license be obtained in order to legally

25  distribute marijuana, neither One Stop nor anyone associated with the business, including

26

27  _____

28  [1] CS-5 has criminal convictions for Robbery in the Second Degree (two counts), Attempted Robbery, and
    Manufacture/Delivery of a Controlled Substance (two counts) and is cooperating with law enforcement for financial
    compensation and consideration on a potential pending criminal charge that has not yet been filed (Unlawful
    Possession of a Firearm).

COMPLAINT – 6
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Keled Ali, has a license to distribute or grow marijuana.  As a result, One Stop is

2  operating unlawfully under all applicable federal, State, and local laws.

3      **B.**    **Search of the One Stop Marijuana Dispensary on March 8, 2018.**

4      On March 5, 2018, the Honorable United States Magistrate Judge Brian A.

5  Tsuchida issued a search warrant for the premises of One Stop, authorizing the seizure of

6  evidence related to the offense of Distribution of Marijuana, in violation of Title 21,

7  United States Code, Section 841.  The warrant was executed on March 8, 2018.

8      Agents observed Keled Ali arrive at the store in the morning.  Another black male

9  let Ali inside of the store.  Both Ali and this other person were contacted by law

10  enforcement officers and placed into custody.  The other person had a loaded firearm on

11  his person.

12      Agents then conducted a search of the store.  Agents located a safe inside of the

13  employee lounge area of the store.  Ali identified himself as the "owner" of the store and

14  provided agents with the combination to the safe.  Inside of the safe, agents found a

15  Smith & Wesson M&P Shield 9mm semi-automatic pistol, bearing serial number

16  HV25087, two .45 caliber magazines, and multiple rounds of 9mm and .45 caliber

17  ammunition.  Agents also recovered a total of approximately 3.2 pounds of marijuana in

18  various jars and bags located throughout the store.

19      **C.**    **Interview of Keled Ali on March 8, 2018.**

20      Keled Ali was transported to SPD headquarters for an interview.  Ali was read his

21  *Miranda* rights, waived those rights, and agreed to speak with agents.  During the

22  interview, Ali made the following statements, among others:

23        • Ali stated he is the owner, operator, and sole employee of One Stop. Ali

24          stated he is subletting the premises from another person.

25        • Ali identified the other person arrested at the store (who possessed the

26          firearm) as a "friend" but not an employee of the store. Ali stated the friend

27          watches the store sometimes in exchange for marijuana.

28

COMPLAINT – 7
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Ali stated the shop is a "compassion club" that distributes marijuana to "members." Ali said the business is funded by member "donations." According to Ali, the members are permitted to take "however much [marijuana] they're comfortable with" in exchange for their donation. However, Ali acknowledged that a customer would not be permitted to take a pound of marijuana with only a $20 donation, and he generally agreed that there was a relationship between the amount of marijuana provided and the size of the monetary "donation."

- Ali denied having any knowledge of firearms in the store, and said someone else must have left any firearms that were recovered. Ali admitted he was the only person who had access to the safe containing the Smith and Wesson pistol, and provided the combination to law enforcement officers at the scene, which was used to open the safe. Agents clarified a second time during the interview that only Ali had access to the safe, which Ali confirmed. Ali also stated during the interview that customers were not permitted in the lounge area where the safe was stored.

- Ali claimed he was generally the only person who sold marijuana at the store, but stated that there was a close circle of his friends who were allowed to hang out at the shop and provide marijuana to customers if Ali was busy.

- Ali acknowledged having some concern about the shop being robbed, but he denied anyone was at the store for security reasons or that anyone was armed for that reason.

- Ali said he generally pays $1,400 per pound for marijuana, and sells it for $2,200. Ali initially stated he sold about one pound per day, but then said it was closer to one-half pound per day. Ali claimed all of the money went towards his rent of $2,100 per month and/or was reinvested into the store.

COMPLAINT – 8
USAO#2018

1      •   Ali admitted that he intentionally did not register his store with the State of

2          Washington or seek the requisite license to sell marijuana because he did

3          not want to be taxed or regulated.

4     An analysis of the information Ali provided indicates that One Stop was an

5 extremely profitable business. Ali has stated that on a busy day, One Stop sells

6 marijuana to 200-275 customers. According to Ali, he sold marijuana for $2,200 per

7 pound, which translates to $34.00 per quarter ounce. Using these prices, an estimate of

8 the store's revenue for the period beginning on October 28, 2017 (when the SPD UC

9 visited One Stop), and continuing through the date of the search warrant on March 8,

10 2018, would be as follows:

11
12
13

| Number of Customers | x | Price per 1/4 ounce | = | Daily Gross Revenue | x | 130 Days of Operation Revenue |
|---|---|---|---|---|---|---|
| 50 | x | $ 34.00 | = | $ 1,700.00 | x | $ 221,000.00 |
| 100 | x | $ 34.00 | = | $ 3,400.00 | x | $ 442,000.00 |
| 150 | x | $ 34.00 | = | $ 5,100.00 | x | $ 663,000.00 |
| 200 | x | $ 34.00 | = | $ 6,800.00 | x | $ 884,000.00 |
| 275 | x | $ 34.00 | = | $ 9,350.00 | x | $ 1,215,500.00 |

14     In actuality, this revenue is likely substantially greater because the true market

15 value price per quarter ounce of marijuana is closer to $70.00-$120.00, according to open

16 source Google searches for quoted prices by legally operating marijuana dispensaries in

17 the Seattle area.

18    **D.**      **Evidence Found on Keled Ali's Smartphone.**

19     During the execution of the search warrant on March 8, 2018, agents seized Ali's

20 smartphone and ultimately searched it pursuant to a federal search warrant. A review of

21 the phone's contents reveals that Ali was indeed the user of the phone. In numerous text

22 and other written communications, the user of the phone identifies himself as Keled Ali,

23 either by using his name (i.e., "this is Keled") or by providing an email address that

24 incorporates the name "Keled Ali."[2]

25

26

27

28 [2] On certain other occasions, it appears that the other person arrested at One Stop (in possession of the firearm) used the phone and also identified himself by name when he did so.

COMPLAINT – 9
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    A review of Ali's communications on the phone revealed numerous

2  communications about him selling marijuana and running the One Stop business.

3  Examples of these communications include:

4      • Ali frequently agrees to have people come to One Stop and sell them a

5        specific quantity of marijuana.  On multiple occasions, there are references

6        to quantities of marijuana such as "grams," "ounces" and "pounds."  On

7        other occasions, Ali discusses selling a "P," which I know from training

8        and experience often refers to a pound of marijuana, and "zips," which

9        refers to ounces of marijuana.

10     • During one text conversation, Ali stated that One Stop had 700-800

11       "members" and that on a busy day he serves 200-275 customers.

12     • In another text message, Ali stated that his store was robbed on December

13       24, 2017, and said, "We'll find the guy."

14     • Some of Ali's communications discuss him selling marijuana to customers

15       in other states, including shipping orders of marijuana to customers in New

16       York, Philadelphia, and Atlanta.  In one text message, Ali referenced an

17       order for two ounces of marijuana from a customer in New York, but stated

18       he only ships quantities of a quarter-pound or more.

19     • On August 27, 2017, during the following exchange of text messages with

20       an unknown person referred to as "S," Ali discussed his operation of the

21       One Stop business, including the profitability of the business and how he

22       attempts to avoid undercover police officers.

23  **ALI:** I'm tryin open a 2nd one nd be majority owner of that one

24  S: How do you open one though without having a license? I'm still
25  confused to your shop regulations lol

26  **ALI:** I own my name

27
28  **ALI:** This shop is best money I ever made but if I get another one that does
    almost good as this one it's high 6 figure talk

COMPLAINT – 10
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    S: Good fuxkin shit!

2    S: Idk what owning your name means lol

3
     **ALI:** Ur name is a business nd state of Washington owns it since u never
4    claimed it..but trust me it's hard to text I'll tell u tonight we could chop it up
     on the phone but it's kinda deep..but basically I only follow federal law not
5    state..the rec weed spots are federally illegal but medical marijuana isn't
6
     S: Oh ok. So if like an undercover comes to your spot and you sell to them
7    could you get in trouble?
8
     **ALI:** If there under aged nd we don't "sell" we take donations nd u gotta
9    have a membership were a private club so an undercover would have to be
10   someone that knows one of us or one of our members nd finesse his way
     inside
11
     **ALI:** We turn ppl away all day everyday literally lol some ppl still end up
12   forcing it nd coming back wit ppl that have membership nd gettin on like
13   that
14
     S: Oh so if someone comes and you don't know them y'all just act like it's a
15   smoke shop?
16
     **ALI:** Naw tell them it's a private club nd need membership or ur medical
17   card to come in..we just met wit a doctor couple days ago u really gotta
     keep this info to ur self nd don't mention it even gimme unless we alone lol
18   but paid her 5k to give 100 ppl that come here there medical..we slowly
19   gonna build files up so we could have proof ppl that come here have there
     medical nd eventually when we big enough nd have most our ppl wit there
20   medical we really will enforce the rules nd turn ppl away that don't have
21   there medical card nd operate like a real deal medical club.
22
     These communications by Ali, and other similar communications found on his
23
     smartphone, illustrate that Ali knew his One Stop business was operating illegally, he
24
     knowingly distributed large quantities of marijuana at a substantial profit, and he took
25
     actions in an attempt to avoid law enforcement detection of, and to cover up, his illegal
26
     activities.
27   //
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

Based upon the foregoing and my training and experience, I respectfully submit there is probable cause to believe that KELED ALI committed the offenses set forth above in this Complaint.

Earl A. Wozniak
Special Agent, ATF

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence this _1st_ day of October 2018, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

JAMES P. DONOHUE
United States Magistrate Judge

COMPLAINT – 12
USAO#2018

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970